EXHIBIT

Blumberg No. 5208

1

## SETTLEMENT AGREEMENT AND FULL AND
## FINAL RELEASE OF CLAIMS

This Settlement Agreement and Full and Final Release of Claims (the "Agreement") is made and entered into this ___ day of August, 2017, by and between Roselia Soto Gamez ("Plaintiff" or "Gamez") and Friendly Ventures, Inc. and Mr. Carson Easterling, individually and as a representative of Friendly Ventures, Inc. (collectively, the "Defendants" or "Ledo's of Edgewater"). Gamez and the Defendants are collectively referred to as the "Parties."

**WHEREAS**, Plaintiff is a current employee of Defendants, in a position that Defendants have classified as exempt for purposes of overtime;

**WHEREAS**, Plaintiff disputes her status as an exempt supervisor;

**WHEREAS**, Plaintiff has pending against Defendants an action in the United States District Court for the District of Maryland, styled <u>Roselia Soto Gamez v. Friendly Ventures, Inc., et al</u>, Case No. 17-594 (the "Lawsuit"), alleging unpaid wages under the Fair Labor Standards Act (FLSA), the Maryland Wage/Hour Law (MWHL), and the Maryland Wage Payment and Collection Law (MWPCL);

**WHEREAS**, Defendants have denied any and all allegations of wrongdoing asserted by Plaintiff;

**WHEREAS**, the Parties collectively desire to settle, fully and finally, all differences between them arising from or in any way connected with Plaintiff's employment or employment relationship with Defendants;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises contained in this Agreement and other good and valuable consideration, and to avoid unnecessary and/or the expense of litigation, it is hereby agreed by and between the Parties as follows:

1.  **CONSIDERATION.** In consideration of Plaintiff's decision to enter into and execute this Agreement, Defendants agree to pay Plaintiff, through her counsel, the total sum of Thirty Two Thousand U.S. Dollars ($32,525.00), to settle all claims involving Plaintiff's Lawsuit and to obtain her resignation pursuant to this Agreement, including but not limited to, claims for unpaid overtime, statutory damages, and attorneys' fees and costs.

2.  **PAYMENTS.** Defendants agree to pay the above settlement amount subject to the following terms and payable as follows:

    a.  For the pay period from August 1, 2017 through August 14, 2017, Plaintiff worked up and through August 7, 2017. In addition to the wages Plaintiff earned from August 1, 2017 through August 7, 2017, Defendants agree to pay $525.00 for the pay period from August 8, 2017 through August 14, 2017. The additional $525.00 shall be treated as wages and shall be paid net of all applicable employment taxes, including Federal, state and local income tax withholding and employee share of the FICA tax, and shall be

reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payment shall be delivered directly to the Plaintiff with her paycheck corresponding to the pay period from August 1, 2017 through August 14, 2017.

b.   Defendants shall pay an initial total payment of Sixteen Thousand U.S. Dollars and 00/100 cents ($16,000.00), by four checks, one payable to Gamez for Five Hundred and Twenty Five U.S. Dollars and 00/100 cents ($525.00), the second check payable to Gamez for Three Thousand Three Hundred Thirty Three Dollars and 33/100 cents ($3,333.33), the third check payable to Gamez for Six Thousand Six Hundred Sixty Six Dollars and 67/100 cents ($6,666.67), and the fourth check payable to Law Office of Justin Zelikovitz, PLLC for Five Thousand Seven Hundred Thirty Seven Dollars and 50/100 cents ($5,737.50). With the exception of the first check payable to Gamez for Five Hundred and Twenty Five U.S. Dollars and 00/100 cents ($525.00) which shall be paid in the payroll cycle following the signing of this Agreement, all other checks shall be delivered within five (5) business days of approval of this Settlement Agreement by the U.S. District Court, provided that Gamez has not revoked or breached this Agreement as set forth below.

c.   Within ninety (90) days of approval of this Settlement Agreement by the U.S. District Court, and provided that Gamez has not revoked or breached this Agreement as set forth below, Defendants shall deliver a second payment totaling Sixteen Thousand U.S. Dollars and 00/100 cents ($16,000.00), by three checks, one payable to Gamez for Three Thousand Three Hundred Thirty Three Dollars and 33/100 cents ($3,333.33), a second check payable to Gamez for Six Thousand Six Hundred Sixty Six Dollars and 67/100 cents ($6,666.67), and a third and final check to the Law Office of Justin Zelikovitz, PLLC for Five Thousand Seven Hundred and Thirty Seven Dollars and 50/100 cent ($5,737.50).

c.   Defendants agree that they will send each of the payments set forth in sub-paragraphs 2(b)-2(c) so that they are received by Law Office of Justin Zelikovitz, PLLC on or before the day in which the installment is due (unless the day is a weekend or holiday, in which case payment must be received on the first business day following the day in which the installment is due). All payments shall be sent via reliable delivery. From the first installment, the first two checks to Gamez ($525.00 and $3,126.75) and from the second installment, the first check to Gamez ($3,333.33) shall be treated as wages and shall be paid net of all applicable employment taxes, including Federal, state and local income tax withholding and employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. From the first installment, the third check to Gamez ($6,348.25) and from the second installment, the second check to Gamez ($6,666.67) shall represent liquidated

2

Doc ID: 3a9ec8f335845520429efec6f27e7b2cee6901b3

and statutory damages, from which no withholdings shall be made and which shall be subject to IRS Form 1099, with the payment amount reported in box 3. The two checks payable to Gamez's attorney, Law Office of Justin Zelikovitz, PLLC, totaling Eleven Thousand Four Hundred Seventy Five U.S. Dollars ($11,475.00), shall represent attorneys' fees and costs incurred by Plaintiffs' counsel in representing Plaintiff with respect to Plaintiff's FLSA, MWHL and MWPCL claims in the Lawsuit. The Law Office of Justin Zelikovitz, PLLC shall provide Defendants' counsel, Howard B. Hoffman, Esq., prior to payment of the attorneys' fees and costs, an executed IRS Form W-9 so the Defendants may issue an IRS Form 1099 reflecting all payments to Law Office of Justin Zelikovitz, PLLC. Defendants shall also issue an IRS Form 1099 reflecting all payments of attorneys' fees and costs paid to Law Office of Justin Zelikovitz, PLLC to the Plaintiff.

d.      Plaintiff understands and agrees that she shall be responsible for the payment of any and all taxes due with respect to any payments under this Agreement. Defendants agree to remit all withholdings to proper taxing authorities. Plaintiff agrees that Defendants have paid all sums earned by and owed to him, including, but not limited to, all salary, tips, bonuses, wages, commissions, overtime, business expenses, allowances, vacation pay, holiday pay, sick pay and other benefits and perquisites as a result of his employment with Defendants and/or her separation from such employment, and further acknowledges that the payments under this paragraph 2 are in full payment of anything of value to which she would be entitled under any policy, plan or procedure of Defendants. Plaintiff also expressly waives any right or claim that she may have or may assert to employment or reinstatement to employment, or to payment for salary, back pay, front pay, interest, bonuses, damages, accrued vacation, accrued sick leave, accrued personal days, medical, dental, optical or hospitalization benefits, pension plan contributions, thrift savings plan contributions or benefits, education benefits, life insurance benefits, overtime, compensatory time, outplacement, severance pay, attorneys' fees, disbursements and/or costs.

3.      **SECURITY.**   In order to guarantee that timely payments will be tendered to Plaintiffs' counsel, Defendants will execute a Confessed Judgment Promissory Note ("Promissory Note"), attached hereto as (Exh. A) with its terms incorporated herein by reference.

4.      **APPROVAL BY COURT / DISMISSAL WITH PREJUDICE**   Upon full execution of this Agreement, Defendants' counsel shall file with the Court a Joint Motion to Approve the Settlement Agreement (the "Motion"). The Motion is attached to this Agreement as Exhibit B. The Parties also agree that this Agreement is contingent upon the U.S. District Court for the District of Maryland's approval of all the material terms of the Agreement and the granting of the Motion, and should the U.S. District Court for the District of Maryland not approve all the material terms of this Agreement, the Agreement will be null and void and no legal effect. Upon

Doc ID: 3a9ec8f335845520429efec6f27e7b2cee6901b3

payment of all sums owed under this Agreement pursuant to Paragraphs 2(a)-2(b), the Plaintiff shall file a Notice of Dismissal with prejudice with the U.S. District Court with respect to the Lawsuit, a copy of which is attached as Exhibit C to this Agreement.  No party shall have the right to appeal any decision, order, or judgment entered in this Lawsuit.

      **5.**     **MUTUAL FULL AND FINAL RELEASE.** Except for Defendants' obligations under this Agreement, in consideration for the payments being provided to Plaintiff and her counsel by Defendants, Plaintiff, for herself, and for Plaintiff's attorneys, heirs, executors, administrators, successors and assigns, fully, finally and forever waives, releases and discharges the Defendants, including, as applicable, all their heirs, executors, administrators,  parent, subsidiary and/or affiliated companies, as well as their and their successors, assigns, officers, owners, directors, agents, representatives, attorneys, and employees (all of whom are referred to throughout this Agreement as "the Releasees"), of and from all claims, demands, actions, causes of action, suits, damages, losses, and expenses, of any and every nature whatsoever, known or unknown, as a result of actions or omissions occurring from the beginning of time through the effective date of this Agreement.  Without limiting the generality of the foregoing, specifically included in this waiver and release are, among other things, any and all claims of alleged retaliation, either as a result of the Plaintiff's resignation of employment or otherwise pursuant to this Agreement, any and all claims alleging wrongful termination, the failure to pay wages (including the minimum wage), the improper pooling of tips, the improper taking of a tip credit, the failure to pay overtime, retaliatory discharge, discrimination, harassment or retaliation in employment on the basis of race, color, sex, religion, national origin, age, disability, handicap, marital status, or any other category protected by applicable federal, state or local law, and/or the violation of any rights under:  the ADEA; Title VII of the Civil Rights Act of 1964; the Civil Rights Acts of 1866 and 1871; the Civil Rights Act of 1991; the Equal Pay Act; the Americans with Disabilities Act; the Family and Medical Leave Act; the Fair Labor Standards Act; the Employee Retirement Income Security Act of 1974; the National Labor Relations Act; the Immigration Reform and Control Act of 1986; the Occupational Safety and Health Act; the Fair Credit Reporting Act; the Sarbanes-Oxley Act of 2002; the Maryland Wage and Hour Law; and the Maryland Wage Payment Collection Law; or any other federal, state or local laws or regulations prohibiting employment discrimination or regulating employment, the payment of wages or the termination of employment in any way, negligent or intentional infliction of emotional distress, breach of contract, fraud, or any other unlawful behavior, the existence of which is specifically denied by the Defendants. This Agreement does not bar Plaintiff from bringing an action to enforce the terms of this Agreement in the event of default.

        **a.**    This Release further includes any and all claims for damages, penalties, attorneys' fees or costs relating to or in any way connected with the matters referred to herein, whether or not now known or suspected to exist, and whether or not specifically or particularly described or referred to herein.

        **b.**    Plaintiff expressly waives any right to assert hereafter that any claim has, through ignorance, oversight or error, been omitted from the terms of this Agreement.

Doc ID: 3a9ec8f335845520429efec6f27e7b2cee6901b3

c.     Plaintiff represents that she has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, any claim, whether known or unknown, or any portion thereof or interest therein, which he had, has or may have against Releasees.

Defendants agrees that Defendants will not in the future file a lawsuit, counter-claim or agency charge against the Plaintiff, pleading any claims barred by this Agreement and Defendants knowingly and voluntarily release and forever discharge all such claims on behalf of the Ledo's of Edgewater, Mr. Carson Easterling, and all of Defendants' heirs, successors, agents, executors and assigns.

Except for Plaintiff's obligations under this Agreement, and in consideration for Plaintiff's execution of this Agreement and voluntary resignation of employment, Defendants knowingly and voluntarily release and forever discharges, to the fullest extent permitted by law, Plaintiff of and from any and all civil claims that could have been asserted in a counterclaim relating to Plaintiff's work for Defendants, alleged employment, alleged theft and/or alleged conversion, or any other claims and from all and every manner of actions, lawsuits, charges, grievances, cause and causes of action, obligations, demands, liabilities, defenses, suits, debts, dues, sums of money, accounts, covenants, contracts, controversies, agreements, promises, variances, trespasses, tort, alleged negligence, harm, damages, judgments, injuries, medical bills, expenses, of any kind whatsoever, known or unknown, contingent or fixed, liquidated or unliquidated, matured or unmatured, in law, equity, or otherwise, which Defendants ever had, now have, or hereafter can, shall, or may have against the Plaintiff including any claims by Defendants for compensation, including but not limited to civil or monetary claims arising under federal, Maryland and/or local law, rule, regulation, ordinance or any other federal, state or local law, rule, regulation, or ordinance; any public policy, contract, tort, defamation, or common law; or any basis for recovering costs, fees, or other expenses including attorney fees incurred in these matters.

This general mutual release also includes any claim for attorneys' fees and costs. The Parties hereby agrees that this Mutual Full and Final Release set forth in this Agreement is intended to be read as expansively and as broadly as permitted by Maryland and federal law. Notwithstanding the foregoing, Defendants may contest any application by Plaintiff for unemployment benefits, and the Parties agree that Defendants may use this Agreement as evidence of Plaintiff's voluntary resignation from employment.

6.     **RESIGNATION/NO ELIGIBILITY FOR REHIRE**. By operation of this Agreement, Plaintiff voluntarily resigns her employment effective upon the date of the approval of this Agreement by the U.S. District Court and agrees not to enter the premise or otherwise loiter outside of, for any reason, the Ledo's Edgewater location. Plaintiff agrees that she will not apply or reapply to Defendants or any of businesses owned and/or operated by Defendants. By her signature below, Plaintiff further acknowledges and agrees that the terms of this Agreement will be good and sufficient cause to reject any application by Plaintiff for employment or engagement with Defendants or any of businesses owned and/or operated by Defendants, and that any refusal to reemploy you will legitimately be based upon the terms of this provision alone and not for any other reason.

Doc ID: 3a9ec8f335845520429efec6f27e7b2cee6901b3

7. **NO OTHER CLAIMS.** Plaintiff represents and warrants that Plaintiff has not filed, nor assigned to others the right to file, nor are there currently pending, any complaints or lawsuits against the Defendants with any court other than the Lawsuit, and Plaintiff hereby promises that Plaintiff will not file, or assign to others the right to file, or make any further claims against the Defendants, on behalf of herself or others, at any time for actions taken up to and including the date Plaintiff executes this Agreement. Plaintiff waives any potential right to file collective and/or class allegations and withdraws and dismisses same with prejudice, and neither Plaintiff, nor any of her attorneys, shall amend this lawsuit or otherwise file additional pleadings, motions or papers, other than those pleadings, motions and/or papers necessary to seek approval of this Agreement or engage in enforcement proceedings. Notwithstanding the foregoing, nothing in this Agreement prevents Plaintiff from filing a charge or complaint with or from participating in an investigation or proceeding conducted by any federal, state or local agency charged with the enforcement of any employment laws, although by signing this release Plaintiff does hereby waive any right or claim to individual relief based on claims asserted in such a charge or complaint.

8. **REFERENCE INQUIRIES**. Plaintiff will forward all reference requests to Carson Easterling who will provide a "neutral" reference confirming dates of employment and job responsibilities (as alleged in the Complaint, "Pizza Cook"), and final hourly rate of pay $15.00/hour. As additional consideration for Plaintiff entering into this Agreement, Defendants shall provide Plaintiff with a reference letter, attached as Exhibit D to this Agreement.

9. **NON-ADMISSION OF LIABILITY OR WRONGFUL CONDUCT.** This Agreement shall not be construed as an admission by the Defendants of any liability or acts of wrongdoing, nor shall it be considered to be evidence of such liability or wrongdoing. Defendants do not admit, and specifically deny, any liability to Plaintiff, and any wrongdoing or violation of any law, statute, regulation, agreement or policy, and Defendants are entering into this Agreement and providing the payments and benefits set forth herein solely for the purpose of avoiding the burdens and expenses of further litigation, including the characterization of a part of the payment as liquidated or other damages. The Parties acknowledge and agree that no judgment has been entered as to any findings of liability or wrongdoing of any kind have been made by any court of law or administrative agency. By tendering her resignation pursuant to this Agreement, Plaintiff does not admit that she has engaged in any wrongdoing and specifically denies same.

10. **NON-DISPARAGEMENT.** The Parties represent and warrant that as of the execution date of this Agreement, the Plaintiff promises that she will not hereafter will not, make or solicit the making of any statement that serves to disparage, criticize or denigrate the Defendants, or the products or services of the Defendants. It is expressly understood that the non-disparagement provisions of this Agreement are substantive and material provisions of this Agreement and breach of this paragraph will support a cause of action for breach of contract and injunctive relief.

11. **RETURN OF DEFENDANTS' PROPERTY.** Plaintiff agrees to return to Defendants, on or before the effective date of Plaintiff's resignation date, all identification cards, credit cards, purchasing cards, keys, and equipment of Defendants.

6

Doc ID: 3a9ec8f335845520429efec6f27e7b2cee6901b3

**12.   GOVERNING LAW.** This Agreement is to be interpreted, enforced, and governed by and under the laws of Maryland, without giving effect to the conflict of laws rules and principles thereof.

**13.   SOLE AND ENTIRE AGREEMENT.** This Agreement sets forth the entire agreement between the parties. Any prior agreements between or directly involving the parties to the Agreement are superseded by the terms of this Agreement and thus are rendered null and void.

**14.   NO OTHER PROMISES.** Plaintiff affirms that the only consideration for Plaintiff signing this Agreement is that set forth in Paragraphs 1 and 2 and that no other promise or agreement of any kind has been made to or with Plaintiff by any person or entity to persuade or cause Plaintiff to execute this document, and that Plaintiff fully understands the meaning and intent of this Agreement, including but not limited to, its final and binding effect.

**15.   RIGHT TO REPRESENTATION, TIME LIMITS AND REVOCATION PERIOD.** Plaintiff, in receiving a copy of this Agreement, acknowledges that she has been advised in writing to seek the advice of her attorney before signing this Agreement, she has had adequate opportunity to so consult and has so consulted. Plaintiff may consider this Agreement for twenty-one (21) days from the date she receives this Agreement. If Plaintiff elects to sign this Agreement in less than twenty-one (21) days, then she is waiving her right to consider this Agreement for up to twenty-one (21) days. Plaintiff shall also have the right to revoke this Agreement at any time within seven (7) days after the date she has signed it. To revoke the Agreement, he must cause a signed copy of this Agreement, marked "Revoked," to be delivered to Howard B. Hoffman, Esq. at 600 Jefferson Plaza, Ste. 304, Rockville, Maryland 20852, before the end of the seven-day period. The date of signing, as indicated next to his signature, will mark the beginning of the seven-day revocation period. This Agreement will become effective on the 8th day after Plaintiff signs it, provided that it has not been revoked before that day, and, provided further, that the Court approves this Agreement in full and dismisses this case. Plaintiff acknowledges that should he exercise his right to revoke provided under this Section 14, doing so shall render all, and no less than all, of this Agreement's provisions null and void.

**16.   LEGALLY BINDING AGREEMENT.** Plaintiff understands and acknowledges that upon Court approval of this Agreement (a) that this is a legally binding release contingent upon Court approval of this Agreement; (b) that by signing this Agreement, Plaintiff is hereafter barred from instituting claims against any of the Releasees in the manner and to the extent set forth in Paragraph 4 and Paragraph 7 above; and (c) that this Agreement is final and binding. This Agreement shall be binding upon and inure to the benefit of Defendants and Plaintiff and their respective heirs, attorneys, administrators, representatives, executors, successors and assigns.

**17.   CONSTRUCTION.** This Agreement shall not be construed against the party preparing it, but shall be construed as if all Parties jointly prepared this Agreement and any uncertainty and ambiguity shall not be interpreted against any one party.

**18.   HEADINGS.** The headings or titles of the paragraphs contained herein are for guidance purposes only and have no force or effect, nor do they in any way alter the terms or meaning of this Agreement.

Doc ID: 3a9ec8f335845520429efec6f27e7b2cee6901b3

19.    **AGREEMENT IS KNOWING AND VOLUNTARY.**    Plaintiff further represents and acknowledges that none of the Releasees have made any representations, statements, promises, inducements, threats or suggestions to influence him to sign this Agreement, except those statements which are expressly set forth herein.   This Agreement has been prepared in English and its English interpretation shall only apply to the Agreement and shall be binding upon the parties.   Plaintiff represents and warrants that she has fully discussed this Agreement with her attorneys, has consulted with a translator of her choosing, if a Plaintiff deems translation to be necessary and/or desirable, and that all terms are understood and that the execution of this Agreement is completely voluntary.   [SPANISH TRANSLATION OF FOREGOING SENTENCE:   EL DEMANDANTE MANIFIESTA Y GARANTIZA QUE SE HA REPASADO PLENAMENTE EL PRESENTE CONVENIO CON SUS ABOGADOS, HA CONSULTADO CON UN TRADUCTOR DE SU ELECCIÓN, SI EL DEMANDANTE CONSIDERE TRADUCCIÓN DE SER NECESARIO Y / O CONVENIENTE, Y QUE TODOS LOS TÉRMINOS SON ENTENDIDOS Y QUE LA EJECUCIÓN DE ESTE ACUERDO ES TOTALMENTE VOLUNTARIA].

20.    **ELECTRONIC SIGNATURES/COUNTER-PARTS.**    Defendants and Plaintiffs agree that this Agreement may be executed in counterparts, each of which shall be deemed an original, but such counterparts shall together constitute one and the same agreement. The signature and execution of this Agreement by any of the parties may be evidenced by facsimile, photocopy, or electronic transmission and such signature and execution shall be deemed to constitute the original signature of the party.   Signatures may be made and delivered electronically to the fullest extent permitted under the Maryland Uniform Electronic Transactions Act, Md. Ann. Commercial Law § 21-101, et seq.

*PLEASE READ THIS DOCUMENT CAREFULLY.   THIS*
*AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.*

| Date:    08/11/2017 | *Rmn*<br>Roselia Soto Gamez |
|---|---|
| Date: | For:    Friendly Ventures, Inc.<br>┌─ DocuSigned by:<br>│ *Carson Easterling*<br>By: └─ F90F7B74FED5414...<br>Name: Carson Easterling<br>Title:  o/b/o Individually And As<br>Principal of Friendly Ventures, Inc. |

8

Doc ID: 3a9ec8f335845520429efec6f27e7b2cee6901b3

Exhibit D

August 10, 2017

To Whom It May Concern:

Please accept this letter of reference for Ms. Roselia Soto Gamez. Generally speaking, Friendly Ventures, Inc. (t/a Ledo's of Edgewater) only provides limited information relating to former employees. However, we can say that Ms. Gamez was employed by us as a Pizza Cook. She worked for us from _____ to _____. Her final pay rate was $15.00/hour.

We wish Ms. Gamez the best of luck in her future endeavors.

Sincerely,

Carson Easterling

Doc ID: 3a9ec8f335845520429efec6f27e7b2cee6901b3

# ▽ HELLOSIGN

# Audit Trail

| | |
|---|---|
| **TITLE** | Acuerdo para firmar |
| **FILE NAME** | Final Settlement ...nt - Unsigned.pdf |
| **DOCUMENT ID** | 3a9ec8f335845520429efec6f27e7b2cee6901b3 |
| **STATUS** | ● Completed |

## Document History

**SENT**

**08/11/2017**
20:00:52 UTC

Sent for signature to Ms. Soto Gamez (Aguilar.rsg@gmail.com)
IP: 73.200.233.131

**VIEWED**

**08/11/2017**
20:19:36 UTC

Viewed by Ms. Soto Gamez (aguilar.rsg@gmail.com)
IP: 50.197.25.254

**SIGNED**

**08/11/2017**
20:24:10 UTC

Signed by Ms. Soto Gamez (aguilar.rsg@gmail.com)
IP: 50.197.25.254

**COMPLETED**

**08/11/2017**
20:24:10 UTC

The document has been completed.



EXHIBIT

A

# PROMISSORY NOTE

**$32,000**                                                                 **August 11, 2017**

    <u>Promise to Pay</u>.  For good and valuable consideration the receipt and sufficiency of which are acknowledged, Friendly Ventures, Inc., a Maryland Corporation ("Ledo's of Edgewater") and Mr. Carson Easterling ("Easterling") (collectively hereinafter referred to as the "Makers"), jointly and severally, and unconditionally promise to pay to the order of Roselia Soto Gamez ("Gamez"), or any subsequent holder of this Note (in either case hereinafter referred to as the "Holder"), the principal sum of Thirty Two Thousand U.S. Dollars ($32,000.00).  The Makers shall pay to Holder the total gross principal amount, payable in two installments of immediately available funds in the amount of Sixteen Thousand U.S. Dollars ($16,000.00), the first payment beginning on five days from the date of approval by the United States District Court of the Settlement Agreement between Maker and Holder, with the remaining payment on or before the 90th day from date of approval by the United States District Court of the Settlement Agreement between Maker and Holder.  Makers shall transmit all payments in accordance with the Settlement Agreement entered into between Makers and Holder, a copy of which is attached hereto as Exhibit A and incorporated herein by reference.  The Monthly Settlement Payment shall be sent to Law Office of Justin Zelikovitz, PLLC, 519 H Street NW, Washington, DC 20001.  Failure by Makers to timely pay any or all of payments shall be a default hereunder.

    The outstanding principal balance due under this Note shall not accrue interest thereon; provided, however, in the event of a default, then interest at the rate of ten percent (10%) per annum shall be due on the unpaid principal balance from the date the Complaint was filed until all sums due under this Note (including, but not limited to, attorneys' fees, collection costs, late charges and interest) are paid in full.  Interest shall be calculated on the basis of a 360 day year.  All payments received hereunder shall be applied first to collection expenses incurred by Holders, then to accrued but unpaid interest, and the balance, if any, to principal.  The principal and interest represented by this Note shall be payable in immediately available funds in lawful money of the United States which shall be legal tender for public and private debts at the time of payment.  All payments hereunder shall be payable in the manner described in the Settlement Agreement, attached as Exhibit A.

    <u>Default</u>.  The Makers shall be in default under this Note on the occurrence of any of the following: (a) failure to make any payment due under this Note when due; and (b) any of the Makers: (i) admitting insolvency or an inability to pay its debts as they mature, (ii) making a general assignment for the benefit of creditors, (iii) commencing a case under or otherwise seeking to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law, statute or proceeding, (iv) by any act indicating its consent to, approval of or acquiescence in any such proceeding or the appointment of any receiver of or trustee for it or a substantial part of its property or suffering any such receivership, trusteeship or proceeding to continue undismissed for a period of thirty (30) days, or (v) becoming a debtor in any case under any chapter of the United States Bankruptcy Code. The failure of Makers to cure any default in their payment obligations as set forth herein within three (3) business days, shall constitute an event of default under this Note.  Provided Holder has notified Makers of the failure to receive any payment, if this Note shall be IN DEFAULT upon the occurrence of any event of default, the Holder, at her sole option, may accelerate the due date of and declare the unpaid balance of this Note to be

immediately due and payable without notice, presentation, demand of payment or protest, which are hereby expressly waived by the Makers.

Bankruptcy of any Makers or Dissolution of Friendly Ventures, Inc.. Notwithstanding anything contained herein to the contrary, in the event that any of the Makers: (i) admits insolvency or an inability to pay its debts as they mature, and (ii) makes a general assignment for the benefit of creditors, (iii) commences a case under or otherwise seeks to take advantage of any bankruptcy, statute or proceeding, (iv) by any act indicates its consent to, approval of or acquiescence in any such proceeding or the appointment of any receiver of or trustee for it or a substantial part of its property or suffering any such receivership, trusteeship or proceeding to continue undismissed for a period of thirty (30) days, (v) become a debtor in any case under any chapter of the United States Bankruptcy Code; in the event Mr. Carson Easterling individually proceeds as described herein, then Holder shall immediately be notified, and shall have the right in the case of Mr. Carson Easterling to confess judgment on the full amount owed under the Note; in the event Friendly Ventures, Inc. proceeds as described herein, it is agreed that Holder may at her sole option, accelerate the due date of and declare the unpaid balance of this Note to be immediately due and payable without notice, presentation, demand of payment or protest, which are hereby expressly waived by the Friendly Ventures, Inc. Notwithstanding anything contained herein, the Makers shall remain jointly and severally liable for the full amount of the debt until paid in full in accordance with this Agreement or the Note.

Prepayment. The Makers may prepay without penalty all or any portion of the principal balance of this Note. Any prepayment shall not postpone or reduce regular installments of principal until such time as any and all sums due hereunder are paid in full.

Costs. The Makers promise to pay all costs incurred by Holder in the collection or enforcement of this Note, whether or not suit is filed hereon, including but not limited to reasonable attorney's fees (if referred to an attorney for collection or enforcement).

Remedies. The Makers hereby authorize and empower any attorney of any court of record, to appear in any court of record of the United States, if the balance due provided for herein is not paid at maturity, including any acceleration thereof as provided herein, and on behalf of the Makers waive the issuance and service of process, and confess a judgment jointly and severally against one or both (at the Holder's option in its sole discretion) of the Makers in favor of the Holder for the original principal amount of this Note as may be due and unpaid hereon, with interest, costs of suit, late fees, plus reasonable attorneys' fees as provided above, waiving all right to appeal, stay of execution, errors, and all exemption laws of any State of the United States (to the extent permitted by law), and ratifying all that said attorney may do. For the sake of clarity, in the event that the Holder is required to confess a judgment under this Note then such judgment will be in the amount of the original principal sum of Thirty Two Thousand U.S. Dollars ($32,000.00) minus any principal payments which have been made by the Makers together with interest, costs of suit, late fees and reasonable attorneys' fees. The authority and power to appear for and enter judgment against Makers shall not be exhausted by one or more exercises thereof, or by any imperfect exercise thereof, and shall not be extinguished by any judgment entered pursuant thereto. Such authority and power may be exercised on one or more occasions, from time to time, in the same or different jurisdictions, as often as the Holder shall deem necessary or desirable, for all of which this Note shall be a sufficient warrant. Makers specifically consent to the filing of and maintenance of a

confessed judgment action in any court of record in the State of Maryland, expressly waive any objection or defense as to insufficiency of process, lack of personal jurisdiction by any said court over the person, improper venue, and specifically consent to the registration or enrollment of the judgment by confession once granted in any other court of record in the State of Maryland. Makers hereby expressly waive any right to a trial by jury in connection with any suit brought under this Note by Holders. **IT IS THE INTENT OF THE MAKERS AND HOLDERS THAT HOLDERS' RIGHT TO COLLECT THE ATTORNEYS' FEES AND COLLECTION COSTS AND EXPENSES HOLDERS ACTUALLY INCURS AFTER THE DATE OF ANY JUDGMENT ON ANY SUIT HEREUNDER IN CONNECTION WITH ENFORCING ANY OF ITS RIGHTS OR REMEDIES HEREUNDER, COLLECTING ANY AMOUNTS OWED HEREUNDER, IN DEFENDING ITSELF FROM ANY CLAIMS ARISING IN CONNECTION HEREWITH, OR IN PROTECTING ANY INTERESTS OF HOLDER HEREIN (collectively, the "POST JUDGMENT COSTS"), SHALL NOT BE DEEMED TO MERGE INTO ANY JUDGMENT AWARDED BY THE COURT, AND SHALL SURVIVE ANY SUCH JUDGMENT. MAKERS AGREE THEY ARE JOINTLY AND SEVERALLY LIABLE FOR ALL POST JUDGMENT COSTS. IT ALSO BEING THE INTENTION OF THE PARTIES HEREUNDER THAT HOLDER HAS THE RIGHT TO BRING AND MAINTAIN ONE OR MORE POST JUDGMENT ACTIONS FOR REIMBURSEMENT OF ANY AND ALL POST JUDGMENT COSTS.**

The delay or failure of Holder to exercise her option to accelerate this Note as provided above, or to exercise any other option or remedy granted to Holder hereunder or under law, or the acceptance by Holder of partial payments or partial performance, shall not constitute a waiver of any default by Makers, and all such options and remedies shall remain continuously in force. Acceleration of maturity, once claimed hereunder by Holder, may at Holder's option be rescinded by written acknowledgment to that effect, but the tender and acceptance of partial payment or partial performance alone shall not in any way affect or rescind such acceleration of maturity. All remedies granted to Holder hereunder, or by law shall be deemed cumulative. The authorities contained herein are deemed coupled with an interest and are irrevocable by Makers.

Makers and all others who may become liable as makers, endorsers, guarantors or accommodation parties for all or any part of this Note ("Obligor(s)") agree hereby to be jointly and severally bound, and jointly and severally (i) waive and renounce any and all homestead exemption rights and the benefits of all valuation and appraisement privileges as against this debt or any renewal or extension hereof; (ii) waive any and all lack of diligence or delays in the collection or enforcement hereof (iii) expressly consent to the release or substitution of any of the collateral securing this Note or any party liable hereunder; and (iv) expressly consent to any extension of time for payment of this Note and any other indulgence or forbearance by Holder. Any such extension, release, substitution, indulgence, or forbearance may be made without notice to any party and without in any way affecting the personal or primary liability of any party liable hereon.

Notice. Any notice or legal process or summons to Makers, where provided for in this Note shall be given by mailing such notice by certified mail, to: Howard Hoffman, Esq., 600 Jefferson Plaza, Suite 304, Rockville, Maryland 20852.

Any notice to the Holder hereof shall be given by mailing such notice by certified mail, requested, to the Holders at: Law Office of Justin Zelikovitz, PLLC, 519 H Street NW, Washington, DC

20001.

      <u>Business Purpose</u>. The Makers hereby represent and warrant to the Holders that (a) the indebtedness evidenced by this Note is incurred for the purpose of acquiring or carrying on a business or commercial enterprise and that such indebtedness is a "commercial loan" within the meaning of Title 12 of the Commercial Law Article of the Annotated Code of Maryland (2000 Rep. Vol.), as amended; and (b) all proceeds arising from the indebtedness will be used solely in connection with such business or commercial enterprise; and (c) the proceeds of such indebtedness will not be used for the purchase of registered equity securities within the purview of Regulation "U" issued by the Board of Governors at the Federal Reserve System; and (d) the loan evidenced by this Note is not a "consumer transaction" as defined in the Maryland Uniform Commercial Code, now or hereafter in effect, and none of the collateral was or will be purchased primarily for personal, family or household purposes.

      <u>Miscellaneous</u>. This Note shall be binding upon the Makers and their heirs, personal representatives, successors and assigns and shall inure to the benefit of Holders and its successors and assigns. All of the obligations of the Makers under this Note shall be the joint and several obligations of the individual and entity comprising the Makers. Any modification to this Note shall be in writing and signed by the Holder. This Note is executed and delivered in and shall be governed by and construed in accordance with the laws of the State of Maryland. Further, the courts of the State of Maryland shall have jurisdiction over this Note and all disputes arising in connection therewith. In the event that any particular provision contained herein is determined to be invalid, whether in whole or in part, the remaining provisions hereof otherwise not invalid and any partially valid provision to the extent valid or enforceable shall continue in full force and effect. Any reference herein to the singular shall include the plural, any reference to the masculine shall include the feminine gender, and any reference to "it" shall include "his," or vice versa, as the case may be.

      Upon the full payment of this Note to Holder by Makers, the original of this Note shall be marked "Paid in Full" and returned the Makers along with any copies of said Note.

      IN WITNESS WHEREOF, the undersigned, with full power and authority to do so, has caused these presents to be executed, under seal, and delivered on the day and year first above written.

MAKERS:

Friendly Ventures, Inc. (t/a Ledo's of Edgewater)
a Maryland Corporation

By: _Carson Easterling_ (DocuSigned by, F90F7B74FED5414...) _____ (SEAL)

Name: Carson Easterling

Title: Owner

DocuSigned by:

*Carson Easterling*

F90E7B74FED5414_____ (SEAL)
Mr. Carson Easterling, individually



**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | | |
|---|---|---|
| Roselia Soto Gamez | * | |
| **Plaintiff** | * | |
| v. | * | Case No.:  1:17-cv-00594-BPG |
| Friendly Ventures, Inc., et al. | * | |
| **Defendants** | * | |

\*      \*      \*      \*      \*      \*      \*

## JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT

The parties jointly move that the Court approve the attached settlement agreement (Ex. 1).  In support of this Motion, the parties state as follows:

1.      The parties conducted a full exchange of information, including payroll records, prior to engaging in settlement discussions.

2.      The settlement agreement was reached in mediation before Magistrate Judge Beth P. Gesner on August 9, 2017.  Each side was capably represented by experienced counsel.

3.      The settlement agreement reached is reasonable and fair, considering the facts and issues in controversy.  The Court is fully aware of the fact and legal issues, having presided over the settlement negotiations.

4.      Additionally, the Court received detailed billing statements from Plaintiff's counsel and reviewed same, prior to the parties entering into this settlement agreement

Respectfully submitted,

/S/ _____

/S/ (with permission)

_____

Howard B. Hoffman, Esquire
600 Jefferson Plaza, Suite 304
Rockville, MD  20852
301-251-3753 Telephone
301-251-3753 Facsimile
hbhoffmanesq@hoholaw.com

Attorney for Defendant

_____

Justin D. Zelikovitz, Esquire
DCWAGELAW
519 H Street NW
Washington, DC 2001
202-803-6083 Telephone
202-683-6102 Facsimile
justin@dcwagelaw.com

Attorney for Plaintiff

*Signed by Howard B. Hoffman with Permission
of Justin Zelikovitz, Plaintiff's Counsel*

APPROVED:

_____
Hon. Beth P. Gesner
U.S. Magistrate Judge

_____
Date

2



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **Roselia Soto Gamez** | * | |
| **Plaintiff** | * | |
| v. | * | Case No.:  1:17-cv-00594-BPG |
| **Friendly Ventures, Inc., et al.** | * | |
| **Defendants** | * | |

\*       \*       \*       \*       \*       \*       \*

### STIPULATION OF DISMISSAL WITH PREJUDICE

Plaintiff Roselia Soto Gamez and Defendants Friendly Ventures, Inc. and Carson Easterling, both by counsel, hereby stipulate pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure that Plaintiff's Complaint is hereby dismissed with prejudice and that each party shall bear its own costs and attorney's fees, or as otherwise agreed between the parties.

Respectfully submitted,

/s/_____                    /s/_____
Justin Zelikovitz, Esq.                       Howard B. Hoffman, Esq.
Law Office of Justin Zelikovitz, PLLC         Attorney at Law
Federal Bar No. 17567                         Federal Bar No. 25965
519 H Street, Second Floor                    600 Jefferson Plaza, Suite 304
Washington, D.C. 20001                        Rockville, Maryland 20852
T: (202) 803-6083                             T: (301) 251-3752
F: (202) 683-6102                             F: (301) 251-3753
justin@dcwagelaw.com                          hhoffman@hoholaw.com

*Attorney for Plaintiff*                       *Attorney for Defendants*